J. S10038/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.N. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| A.L., | : | No. 1699 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered September 11, 2019,
in the Court of Common Pleas of Lackawanna County
Civil Division at No. 2012-FC-40570

BEFORE: PANELLA, P.J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 11, 2020**

A.L. ("Father") appeals from the final protection from abuse ("PFA") order entered against him on September 11, 2019, in the Court of Common Pleas of Lackwanna County, pursuant to 23 Pa.C.S.A. § 6102(a)(5). After careful review, we reverse and remand.

The trial court set forth the following:

> This case involves a custody dispute and request for [a PFA order] as a result of allegations of sexual abuse by [Father] against the parties' three (3) minor children, J.L., R.L. and D.L., (hereinafter "minor children"). By way of background, [] A.N. (hereinafter "Mother"), filed an Emergency Petition for Special Relief on April 24, 2019, wherein she alleges the minor child, J.L., disclosed that she was sexually molested by Father for over a period of two (2) years, and the Lackawanna County Office of Youth and Family Services (hereinafter "OYFS") were investigating the allegations. As a result, Mother was granted temporary sole legal and physical custody of

the minor children until further Order of Court. On May 3, 2019, Mother filed a [PFA petition] on behalf of the minor children against Father wherein she alleges Father sexually molested the minor child, J.L., on multiple occasions, exhibiting grooming behavior towards the minor children, R.L. and D.L., and stalking the minor child, J.L., on social media and through therapy. As a result, Mother was granted a [t]emporary [PFA o]rder on behalf of the minor children against Father. The hearings on Mother's Petition for Emergency Special Relief and Petition for Protection from Abuse were consolidated and continued on numerous occasions as a result of the pending investigations. A hearing commenced before [the trial court] on September 11, 2019. The Guardian ad Litem, Elizabeth Munley, Esquire (hereinafter "GAL"), provided her memorandums dated July 11, 2019 and September 9, 2019 wherein she recommended that th[e trial c]ourt's [o]rder dated July 12, 2019 granting Mother sole legal and physical custody of the minor children remain in full force and effect.

Trial court opinion, 11/7/19 at 1-2 (record citations omitted).

During the hearing, th[e trial c]ourt heard uncontroverted testimony from the GAL, Mother and Maternal Grandfather, [L.N.] (hereinafter "Maternal Grandfather"). The GAL testified as to the information collected during her investigation which impacted her report and recommendation to th[e trial c]ourt. Specifically, the GAL testified that, "The oldest child, J.L., who's 11 years old, made a disclosure to her counselor, Ms. Simona Gavern at the Aaron Center. As a result, the [OYFS was] contacted and scheduled a [Children's Advocacy Center ("CAC")] interview." J.L. had undergone multiple interviews at the [CAC] and submitted to a physical examination by Ms. Cheryl Friedman on April 30, 2019. The GAL stated, "As noted in Cheryl Friedman's report, which has been provided to counsel, she suspected that sexual assault as evidence[d] by [J.L.'s] disclosure of an object or finger being introduced past the labia majora. After a conversation with Ms. Friedman —

which I had with Ms. Friedman, she indicated that J.L. was referring to [F]ather as being the individual who introduced the object into J.L." At the conclusion of the CAC interviews, OYFS unfounded the allegations of abuse against Father.

The GAL indicated that, "She (Ms. Gavern) explained in her July 3rd, 2019 letter that [J.L.] is also diagnosed[with] PTSD. She (J.L.) had commenced some self-harming behaviors and expressed suicidal ideation at the time that she had commenced therapy when she was residing in [F]ather's home." "She voluntarily disclosed that she wanted to -- did not want to go and visit [F]ather because he quote, 'Did stuff to her'." Then, J.L. drew on a diagram where Father touched her being the breast and genital area. The GAL further testified that, "Ms. Gavern explained in her letter also that J.L. had experienced symptoms such as headaches, nightmares, and voices, hearing voices. As a result of this disclosure, that's when one of the CAC interviews was scheduled. And also J.L. was -- felt very guilty at that time she was concerned about her brother being in the care of [F]ather because originally [F]ather still had the two boys."

The GAL went on to testify regarding disclosures made by the other minor children, D.L. and R.L., to their therapist, Ms. Justine Andrews. The GAL stated that, "D.L. disclosed to Ms. Andrews that [F]ather tried to touch his penis on a few occasions. He was able to push him away on all occasions with the exception of one time and he also indicated to Ms. Andrews that after that time that he touched his penis it hurt after that. Additionally, the GAL indicated, "There was also concern that D.L. had that he disclosed to Ms. Andrews regarding witnessing [F]ather hit J.L. with a badminton racket as well." Such disclosure was reported to OYFS and the minor children submitted to another CAC interview. The minor children's disclosures at the CAC did not corroborate each other and, as a result, OYFS closed the case.

The GAL also testified that, "I spoke with her (Ms. Andrews) on September 9, 2019 in order to

clarify her report and asked her some questions regarding her report and she clarified that R.L. is not ready to meet with [F]ather yet, as he still has some issues that he needs to work through." The GAL went on to state, "Regarding D.L., he not only made the disclosures to Ms. Andrews, which precipitated a third CAC interview, but he also continues to experience nightmares, has separation anxiety with [M]other, and continues to have difficultly expressing and processing his emotions regarding [F]ather. As part of our phone conversation, Ms. Andrews told me that D.L. is not ready at this time to reunite with [F]ather."

The GAL confirmed that both D.L. and R.L. have also been diagnosed with PTSD as a result of the trauma from Father and being separated from their sister for a period of time. The GAL testified that, as a result of the PTSD, "He (D.L.) has anxiety, irritability, hyper vigilance, negative outlook, and intrusive thoughts and nightmares." "He was working on decreasing the severity of symptoms. He continues to report nightmares, nervousness regarding [F]ather, along with difficulty processing and expressing emotions regarding [F]ather." The GAL testified further that, "He (R.L.) is working on decreasing his symptoms. However, he continues to report anger towards [F]ather and his difficulty managing his emotions and using coping skills when he is angry.

Additionally, the GAL stated that during her investigation she spoke with Detective Tim Mackerel of [the] Carbondale Police Department. Detective Mackerel indicated that the criminal investigation against Father is still ongoing and the counselors continue to be in contact with him regarding further disclosures by the minor children.

The GAL had an opportunity to interview the minor children. The GAL stated the minor children expressed fear and concerns with Father. Specifically, R.L. stated to the GAL that Father did not really take care of him. J.L. indicated to the GAL that she would take care of her brothers when she lived with Father and would ask Father for help, but she did not get the

help she needed. J.L. continued to express how worried she was for brother living with Father and her concerns that Father drinks a lot. Further, J.L. said that she was scared when she talked to Father and was afraid that he would try to pick her up.

Furthermore, during the hearing, Mother testified that, "She (J.L.) had approximately 40 cuts on her forearms. She disclosed to me that due to the fact of [F]ather hurting her she thought that that was going to be an easier way out of his house." Mother went on to testify that, "She's (J.L.) just disclosed her fear of [F]ather." Mother stated that, "I have not seen fear in my child's eye like this ever before . . . , I mean, J.L., she has nervous breakdowns even talking about him (Father). Both my boys experience nightmares. Even after the CAC interview last week they were just so emotionally distraught."

During Maternal Grandfather's testimony, he indicated that D.L. told him that he saw Father hitting J.L. with a badminton racket. Further, Maternal Grandfather testified that, "He (D.L.) did tell me that [R.L.] had told him that [Father] had touched him where you're not supposed to be touched and I asked if [Father] touched you and he said, 'He tried, but not, I smacked him.'"

Therefore, based upon the uncontroverted testimony, th[e trial c]ourt found that the preponderance of the evidence indicated the minor children were entitled to a [PFA o]rder against Father. Thus, th[e trial c]ourt granted a [PFA o]rder on behalf of the three (3) minor children against Father for a period of three (3) years.

*Id.* at 4-7 (record citations omitted).

Father filed a timely notice of appeal "from an [o]rder entered [at No. 2012 FC 40570] on the 11ᵗʰ day of September 2019." (Father's notice of appeal, 10/9/19.) Attached to Father's notice of appeal is the trial court's September 11, 2019 order that deemed Mother's emergency petition for

special relief moot. Father contemporaneously filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) wherein he raised 13 issues challenging the September 11, 2019 PFA order.

On November 22, 2019, this court entered a rule to show cause order directing Father to explain whether he intended to appeal the order deeming Mother's emergency petition for special relief moot or whether he intended to appeal the PFA order. (Order of court, 11/22/19.) Father filed a timely response wherein he states that he "intended to appeal the [trial] court's granting of a three (3) year PFA on behalf of the minor children." (Father's "answer to this court's order of November 22, 2019," 12/2/19 at 2, ¶ 7 (full capitalization omitted).)

On December 13, 2019, this court entered an order acknowledging Father's response to the show-cause order and Father's intent to seek review of the PFA order. (Order of court, 12/13/19.) The order also removed this appeal from the Children's Fast Track designation because it is not an appeal from a child custody order but, rather, an appeal from a PFA order, which is not a permissible Children's Fast Track designation. *See* Superior Court I.O.P. 212(A)(1) (designating dependency, termination of parental rights, adoption, custody, and paternity as Children's Fast Track cases).

Appellant raises the following issues for our review:

> [1.] Whether the trial court erred in law and/or abused its discretion in awarding sole custody of the minor children to [Mother?]

[2.] Whether the trial court erred in law and/or abused its discretion in granting a three (3) year [PFA o]rder naming the minor children as protected parties[?]

[3.] Whether the trial court erred in law and/or abused its discretion in failing to allow the [Father] to call the minor children as witnesses[?]

[4.] Whether the trial court erred in law and/or abused its discretion in failing to allow [Father] to call the minor children as witnesses when neither [Mother] nor the [GAL] filed a Motion to Quash the Subpoena[?]

[5.] Whether the trial court erred in law and/or abused its discretion in admitting hearsay statements of the minor children[?]

[6.] Whether the trial court erred in law and/or abused its discretion in failing to afford [Father] his right to confront witnesses under the United States Constitution and the Commonwealth Constitution[?]

[7.] Whether the trial court erred in law and/or abused its discretion in admitting hearsay statements of the minor children's therapists[?]

[8.] Whether the trial court erred in law and/or abused its discretion in admitting a drawing purportedly drawn by [] one of the minor children which was hearsay[?]

[9.] Whether the trial court erred in law and/or abused its discretion in admitting a drawing purportedly drawn by [] one of the minor children which was not properly authenticated[?]

[10.] Whether the trial court erred in law and/or abused its discretion in failing to allow [Father] to question [Mother] regarding the death of her

> child while the child was in the custody of [Mother's] then paramour[?]
>
> [11.] Whether the trial court erred in law and/or abused its discretion in failing to allow [Father] to question [Mother] relative to broken bones suffered by a child in her care[?]
>
> [12.] Whether the trial court erred in law and/or abused its discretion in accepting the recommendation of the GAL when the GAL never made an inspection of the minor children's residence and could not testify to the minor children's school attendance[?]
>
> [13.] Whether the trial court erred in law and/or abused its discretion when the GAL admitted the minor children never made a disclosure of sexual abuse to her[?]

Father's brief at 4-6.

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *Drew v. Drew*, 870 A.2d 377, 378 (Pa.Super. 2005) (citation omitted).

At the outset, we note that Father's brief may be characterized as inartfully drafted. Nevertheless, Issues 5, 7, and 8 of Father's statement of questions presented raise hearsay challenges. A reading of Father's brief demonstrates that he repeatedly and consistently, albeit inartfully, raises these hearsay challenges and essentially contends that because the hearsay testimony of the GAL did not qualify for any exception to the hearsay rule, that hearsay testimony alone constituted an insufficient basis for entry of a final PFA order. We agree.

In reviewing the admissibility of evidence, "an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa.Super. 2015) (citations omitted).

The Pennsylvania Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. The Tender Years Act, 42 Pa.C.S.A. § 5985.1, creates an exception to the hearsay rule for victims of childhood sexual abuse. *See Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 988 (Pa.Super. 2007). "The tender years exception allows for the admission of a child's out-of-court statement because of the fragile nature of young victims of sexual abuse." *Commonwealth v. Lukowich*, 875 A.2d 1169, 1172 (Pa.Super. 2005), *appeal denied*, 885 A.2d 41 (Pa. 2005). The tender years exception provides:

> **(a) General rule.--**
>
> (1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in

[18 Pa.C.S.A. Chapter 31 (relating to sexual offenses)], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a).

(a.1) **Emotional distress.--**In order to make a finding under subsection (a)(1)(ii)(B) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

42 Pa.C.S.A. § 5985.1(a.1).

"Any statement admitted under the [tender years hearsay exception] must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making." *Commonwealth v. O'Drain*, 829 A.2d 316, 320 (Pa.Super. 2003), citing 42 Pa.C.S.A. § 5985.1(a). "The main consideration for determining when hearsay statements made by a child witness are sufficiently reliable is whether the child declarant was particularly likely to be telling the truth when the statement was made." *Commonwealth v. Lyons*, 833 A.2d 245, 255 (Pa.Super. 2003). Factors the court may consider when determining reliability include, but are not limited to, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." *Commonwealth v. Delbridge*, 855 A.2d 27, 47 (Pa. 2003); *see also Lyons*, 833 A.2d at 255.

"[P]rior to concluding a child witness is unavailable, a court must determine whether forcing the child to testify will result in such serious emotional distress to the child that [the child] will not be able to reasonably communicate." *Lyons*, 833 at 254, citing 42 Pa.C.S.A. § 5985(a.1). "To reach this determination, the court 'may' either question the child witness or hear testimony of a parent or person who has dealt with the child in a therapeutic setting." *Id.* at 254-255, citing 42 Pa.C.S.A. § 5985(a.1)(1)-(2). "The Tender Years Statute requires that an *in camera* hearing take place to

determine whether a child witness is unavailable to testify." ***Lyons***, 833 A.2d at 254, citing 42 Pa.C.S.A. § 5985(a).

Here, the trial court permitted the GAL to testify on the basis of reports prepared by Simona Gavern, Cheryl Friedman, and Justine Andrews. (Notes of testimony, 9/11/19 at 5-12.) Ms. Gavern and Ms. Friedman provided counseling to J.L. Their reports contained alleged disclosures of sexual abuse by Father made by J.L. Ms. Andrews worked with D.L. and J.L. as their therapist. Ms. Andrews's report contained alleged disclosures of sexual abuse by Father made by D.L. and J.L. The trial court also permitted the GAL to testify about a conversation that she had with Ms. Andrews that served to clarify the sexual abuse disclosures contained in Ms. Andrews's report. ***See id*.** We note that neither Ms. Gavern, Ms. Friedman, nor Ms. Andrews testified at the hearing.[1]

---

[1] We note that Father's counsel repeatedly placed hearsay objections on the record.

We further note that "[a]n out-of-court declaration containing another out-of-court declaration is double hearsay." ***Commonwelath v. Laich***, 777 A.2d 1057, 1061 (Pa. 2001) (citation omitted). "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. This requirement is satisfied when each statement comes within an exception to the hearsay rule." ***Id.*** (citation omitted). Father did not raise the issue of whether the GAL's testimony contained double hearsay because it relayed the minor children's alleged sexual abuse disclosures through the reports of Ms. Gavern, Ms. Friedman, and Ms. Andrews, as well as the GAL's conversation with Ms. Andrews. Therefore, the issue is not before us.

In its Rule 1925(a) opinion, the trial court set forth the tender years exception to the hearsay rule and then concluded that it permitted the GAL to testify after determining that the minor children were unavailable as witnesses. Nothing in the certified record before us, however, indicates that the trial court conducted an *in camera* tender years hearing to determine the reliability of the minor children's statements or the unavailability of the minor children. We note that at the PFA hearing, Mother's counsel stated that he "believe[d] it was the [trial c]ourt and the [GAL's] recommendation that after multiple interviews with the [minor] children through CAC and ongoing therapy," that "it would not be in the [minor] children's best interest to testify." (Notes of testimony, 9/11/19 at 5.) Counsel for Mother then stated that "if the [trial c]ourt wishes to interview them[,] that's certainly possible and [Mother] has no objection to bringing them here. But it's not in their best interest and actually very risky for them to be here." (*Id.*) Clearly, the trial court did not conduct an *in camera* tender years hearing. Consequently, the GAL's testimony of the minor children's alleged sexual abuse disclosures constituted inadmissible hearsay and the trial court abused its discretion by misapplying the law when it permitting those hearsay statements to come into evidence through the testimony of the GAL. In the absence of the hearsay testimony of the GAL, the evidence of record is insufficient to support a finding that Father sexually abused the minor children by a preponderance of the

evidence.[2] ***See K.D., by K.H.D. v. J.D.***, 696 A.2d 232 (Pa.Super. 1997) (reversing PFA order based on inadmissible hearsay testimony).

We, therefore, reverse the final PFA order entered by the trial court. Based on our disposition, we need not address Father's remaining issues.

Order reversed and case remanded for a new hearing in compliance with this decision. Jurisdiction relinquished.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/11/2020

---

[2] The two other witnesses who testified were Mother and Maternal Grandfather. Mother testified that none of the minor children made disclosures of sexual abuse to her. (Notes of testimony, 9/11/19 at 33.) Maternal Grandfather testified that D.L. told him that he saw Father hit J.L. with a badminton racket, but he did not testify as to any sexual abuse disclosures. (***Id.*** at 49-50.)